FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

JAN 10 2019

for the

District of New Mexico

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DENNIS VELASQUEZ JR | ) | Case No. |
| XX/XX/1994 | ) | 19mj416 |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| Defendant(s) | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ January 5, 2019 _____ in the county of _____ Rio Arriba _____ in the

_United States_ District of _____ New Mexico _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1152 | General Crimes Act |
| 18 U.S.C § 1111 | Murder |
| 18 U.S.C § 924(c) | Discharge of a firearm during a crime of violence |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Michelle Cobb, Special Agent, FBI
Printed name and title

Sworn to before me and signed in my presence.

Date: January 10, 2019            _____
Judge's signature

City and state:        Albuquerque, New Mexico            Karen B. Molzen, U.S. Magistrate Judge
Printed name and title

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| VS. | ) | Case No. _____ |
| | ) | |
| | ) | |
| DENNIS VELASQUEZ JR | ) | |
| DOB: XX/XX/1994 | | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**
**AND PROBABLE CAUSE ARREST**

I, Michelle A. Cobb, Special Agent of the Federal Bureau of Investigation (FBI), United States Department of Justice, having been duly sworn, state:

**INTRODUCTION**

1.      I am a Special Agent (SA) of the Federal Bureau of Investigation, and have been since January 2017. I am currently assigned to the Albuquerque Division, Santa Fe Resident Agency. During my employment with FBI, I have conducted numerous investigations for suspected violations of federal law, including Indian Country crimes and crimes of violence. I have received training in how to conduct complex investigations and I have previously participated in the execution of arrest and search warrants involving federal violations. My investigative training and experience includes, but is not limited to, conducting surveillance, interviewing subjects, targets and witnesses, writing affidavits for and executing search and arrest warrants, managing confidential human sources and cooperating witnesses/defendants, issuing subpoenas, collecting evidence, and analyzing public records.

2.      The information set forth in this affidavit was derived from my own investigation

1

and/or communicated to me by other employees of the FBI, members of the Ohkay Owingeh Pueblo Department of Public Safety (OOPDPS), other law enforcement agencies, other reliable sources, and from records and documents that I and others have reviewed. This affidavit includes only those facts that I believe are necessary to establish probable cause and does not include all of the facts uncovered during the investigation.

## PROBABLE CAUSE

3.      On January 5, 2019, I was contacted by OOPDPS Sergeant Bryce Gabaldon regarding a shooting on Ohkay Owingeh Pueblo. The shooting took place on State Road 68, across from the Ohkay Travel Center, located at NM-68, Ohkay Owingeh, New Mexico 87566. Sergeant Gabaldon advised there was one deceased Indian male, an enrolled member of Ohkay Owingeh Pueblo, named P.G. YOB 1965, hereafter Glock. Sergeant Gabaldon also advised Glock's two young children, P.G. YOB 2006, hereafter John Doe, and N.G. YOB 2008, hereafter Jane Doe, were inside his vehicle when he was shot outside of the vehicle. The incident appeared to be road rage related.

4.      I responded to the scene of the incident and saw a deceased male lying on the ground with an apparent gunshot wound to the face area. The deceased male was identified as Glock. Glock was lying next to his White Toyota Tacoma Two Door Pickup Truck. John Doe and Jane Doe had been taken to the Espanola Police Department.

5.      Sergeant Gabaldon informed me Glock was involved in a road rage incident with another vehicle. The incident began where NM-74 merges onto NM-68. Between the time the incident began and when Glock was shot, Glock took three photos of the suspect vehicle with his Samsung Galaxy Note9 Smartphone. I viewed the photos and recognized the vehicle to be a

2000's model, red in color Mazda SUV, bearing a yellow New Mexico license plate. Due to the quality of the photo, I was unable to fully make out the license plate number.

6.      I contacted the FBI Albuquerque Operations Center and requested they conduct a public source CLEAR search of all red in color Mazda SUVs for the state of New Mexico. The Operational Support Technician (OST) further identified the vehicle as a red in color, 2005 or 2006, Mazda Tribute. The OST searched public source CLEAR using the following vehicle search criteria: 2005, Mazda, Tribute, NM. The search produced 12-pages of results.

7.      FBI Agents interviewed an eye witness, A.C. YOB 1997, hereafter Witness 1, at the scene who advised they saw the entire altercation and knew who the shooter was. Witness 1 was driving in their vehicle when they noticed a White Toyota Tacoma Pickup Truck cut off another car. The other car was described as Maroon SUV, possibly a 2003 Hyundai, with tinted windows and a yellow license plate. Witness 1 saw the White Toyota Tacoma Pickup Truck behind the Maroon SUV. The Maroon SUV slowed down and tried to hit the White Toyota Tacoma Pickup Truck and run it off the road. The Maroon SUV then pulled over to the side of the road and the driver signaled for the White Toyota Tacoma Pickup Truck to pull over. Witness 1 saw a female in the front passenger seat of the Maroon SUV laughing as they pulled over.

8.      Witness 1 pulled over to cross NM-68 to get to the Ohkay Travel Center to get a drink. The White Toyota Tacoma Pickup Truck pulled up behind them, to their left, and the Maroon SUV pulled up to the right of and slightly past the White Toyota Tacoma Pickup Truck, behind Witness 1. Witness 1 reported the following after viewing the following events through his side view mirror. The driver of the White Toyota Tacoma Pickup Truck, further identified as

3

victim Glock, exited his vehicle and approached the Maroon SUV. Glock had a baton in his

hand. Witness 1 saw Glock fall to the ground.

9.      FBI Agents interviewed Glock's son, John Doe, who described the suspect car as

a Maroon SUV, bearing a yellow New Mexico plate. The first number of the plate was a "6" and

the third to last letter was a "W". John Doe saw two guys and one girl smoking and drinking in

the car. The driver was an old guy, chubby, with grayish-white hair. The car got in front of their

car, flipped them off, and almost made them run into another car. Glock rolled down his window

and yelled to the other car to tell them there were kids in the car.

10.     John Doe further stated a girl with blackish brown hair shot Glock from the back

seat of the Maroon SUV. The car window glass directly behind the driver's seat broke. John Doe

saw the girl holding a shot gun, the kind with two shots, above her shoulder. The girl was sitting

on the other side of the car, behind the front female passenger, and shot Glock one time. John

Doe was familiar with guns and had learned about a rifle recently.

11.     Using the photos Glock took with his smartphone, John Doe's description of the

license plate, Witness 1's information, and the 12 pages of public source CLEAR results, I

identified a Red 2005 Mazda Tribute, bearing New Mexico license plate 821WCG, registered to

the defendant's mother, A.V. YOB 1974, hereafter Witness 2. I further identified the defendant's

father, D.V. YOB 1974, hereafter Witness 3, as being associated with the same vehicle.

Additionally, I identified Witnesses 3's son as DENNIS VELASQUEZ JR, YOB 1994, hereafter

VELASQUEZ, a non-Indian. Further, the physical description of Witness 3 and Witness 2 match

that given by Witness 1.

12.     On January 8, 2019, I administered a photo spread to Witness 1 at the FBI

Albuquerque, Santa Fe Resident Agency. Witness 1 was shown a sequential array of six

photographic images depicting males. The images were shown individually. Witness 1 was asked if any of the images depicted the male who was driving the suspect vehicle and who shot Glock in the face. Witness 1 positively identified image number four, a known image of Witness 3. Witness 1 stated they were 100% positive Witness 3 was the driver of the vehicle.

13.     On January 8, 2019, a search warrant was approved by a United States Magistrate Judge. On January 9, 2019, the search warrant was executed at the home of VELASQUEZ. The search encompassed the residential location, all structures on and about the property, to include the structures directly across from and next to his home within Lot A, as well as all vehicles located within the property, to include a Red Mazda Tribute Four Door SUV, New Mexico license plate 821WCG, Vehicle Identification Number (VIN) 4F2CZ94135KM25976.

14.     During the search, FBI Agents located the Red Mazda Tribute Four Door SUV, New Mexico license plate 821WCG, Vehicle Identification Number (VIN) 4F2CZ94135KM25976. I observed the vehicle parked next to VELASQUEZ's residence. The back passenger window, located directly behind the driver's seat, was missing. There were pieces of glass located within the window seal and inside the vehicle on the floor and seat areas.

15.     While the search was being executed, FBI Agents conducted a consensual interview of E.V. YOB 1966, hereafter Witness 4. Witness 4 stated he was the brother of Witness 3. According to Witness 4, on Saturday night when everything happened, Witness 4 talked with Witness 3 and learned VELASQUEZ "had 'taken someone's life." Witness 3 told Witness 4 the victim had exited his car with what looked like a shotgun. The victim had a mask over his face and looked menacing. They believed he was deliberately hiding his face. Witness 3 was getting out of his car to confront the man and became afraid when he saw the weapon. VELASQUEZ was sitting in the back seat of the Red Mazda Tribute. According to Witness 4,

they keep a rifle in the back seat for fear of gang and drug dealer activity in Espanola. Witness 4 then showed Agents where the rifle was hidden on the property. The rifle was found inside a large generator parked in front of the house in the roadway. According to Witness 4, Witness 3 told him VELASQUEZ shot from the car's back seat through the window.

16.     Agents conducted a consensual interview of Witness 3. Witness 3 stated he was in Espanola with Witness 2 and VELASQUEZ on Saturday, January 5, sometime after lunch. They drove to Espanola to pick up parts to repair their frozen water line at home. Witness 3 drove while Witness 2 sat in the front passenger seat and VELASQUEZ sat behind her. On their way out of town Witness 2 said she needed cigarettes, so Witness 3 decided to get them from the casino where they sell them cheaper. Witness 3 drove towards Okhay Owingeh Casino on Chamita Road. When he passed a little car dealership, a White Toyota Tacoma wanted to come onto the road, but Witness 3 had the right of way so he didn't let them. He turned into the middle of the road to cross over to the gas station, but had to stop and wait for the truck in front of him to wait for traffic and cross first.

17.     The White Toyota Tacoma pulled into the middle and pointed his truck at Witness 3's car. According to Witness 3, without putting the truck in park, the male driver jumped out and ran towards Witness 3's car with what appeared to be a sawed off shotgun next to the outside of his right leg. The man was wearing what looked like a surgical mask or a gold wrap over his mouth area and had a hoodie pulled over his head. Witness 3 started to open his car door to ask the man what his problem was, but closed it when he saw the shotgun. As the man approached their car, Witness 3 heard a boom and saw the man fly and fall backward. Witness 3 didn't know there was a gun in the back seat. According to Witness 3, VELASQUEZ fired one shot from a .243 Bolt-Action Rifle. Witness 3 didn't know if the man ever touched their car, but was as close

6

as a gun length away. Witness 3 believed all the windows were up to their car. According to Witness 3, when VELASQUEZ fired the shot, the back window fell inside their car. According to Witness 3, VELASQUEZ said he didn't shoot to kill the man, but wanted to scare him. According to Witness 3, VELASQUEZ did it to protect his dad and mom. After VELASQUEZ fired the shot, Witness 3 drove them directly home. Witness 3 didn't stay at the scene because he didn't have a phone to call 911 and didn't trust Indian cops. Witness 3 didn't see anyone else in the White Toyota Tacoma, but VELASQUEZ told him he thought he saw someone. According to John Doe, the vehicle stayed until they saw him pull up his dad's cell phone. According to Jane Doe, the driver of the vehicle, further identified as Witness 3, said "Oh [bad word] he had kids!"

18.     Agents conducted a consensual interview of Witness 2. Witness 2 stated she, Witness 3, and VELASQUEZ drove to Espanola on Saturday in their red car. On their way out of town, they decided to buy cigarettes at San Juan (Ohkay Owingeh). When they turned at San Juan a Toyota truck was following them super close. The truck parked behind them, the male driver got out of the truck, and Witness 2 saw he was wearing a gold mask. Witness 2 described the altercation as a "road rage" incident. Witness 2 turned her head away from the man as he ran towards their car and never saw anything in his hands. Someone in the car said "he has a gun" and soon after Witness 2 heard a gunshot. According to Witness 2, VELASQUEZ shot the man from the back seat of their car. The man never touched their car and they never spoke to him. Witness 2 thought the gun VELASQUEZ used was a rifle. According to Witness 2, VELASQUEZ fired one shot through the rolled up window. After the shooting, according to Witness 2, VELASQUEZ kept saying "he was going to kill you dad." They didn't stay at the

scene because they were terrified. Witness 2 hadn't contacted the police because she didn't want her son to go to jail.

19.     Agents conducted an interview of VELASQUEZ. VELASQUEZ was read his Miranda Rights via an FD-395 Advice of Rights Form. VELASQUEZ waived his rights and agreed to speak with investigators. VELASQUEZ stated on Saturday he went to Espanola with his mom and dad sometime between 1:00 and 3:00 PM. They went to Espanola to get new water lines for their house since theirs had frozen. Witness 3 drove them to Hacienda and then Lowe's. They then went to get cigarettes, but never got them. At this point in the interview, VELASQUEZ stated he wanted to tell investigators everything the following day with a lawyer present.

## CONCLUSION

20.     Based on the information contained herein, I submit there is probable cause to believe that DENNIS VELASQUEZ JR did unlawfully commit a felony in violations of 18 U.S.C § 1152, General Crimes Act, 18 U.S.C § 1111, Murder, and 18 U.S.C § 924(c), Discharge of a firearm during a crime of violence.


   I declare under penalty of perjury the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Michelle A. Cobb
Special Agent
Federal Bureau of Investigation
Santa Fe, New Mexico

Supervisory Assistant United States Attorney Kyle T. Nayback approved this affidavit for legal
sufficiency.

Subscribed and sworn to before me this 10th day of January, 2019.

UNITED STATES MAGISTRATE JUDGE
Albuquerque, New Mexico